NOT FOR PUBLICATION                                              CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENISE BROWN, | : |
| Plaintiff, | : **OPINION** |
| v. | : Civ. No. 02-6018 (WHW) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**Walls, District Judge**

      Plaintiff Denise Brown ("Brown" or "plaintiff") appeals administrative law judge ("ALJ") Ryan's decision to deny her claim for social security and supplemental security income ("SSI") disability benefits pursuant to 42 U.S.C. § 405(g). For the following reasons, ALJ Ryan's decision to deny benefits is affirmed.

## BACKGROUND

**A.    Procedural History**

      Plaintiff Denise Brown claims she has been unable to work since August 18, 1994, because of a herniated cervical disc. (Tr. 43.) Brown filed applications for a period of disability, disability insurance benefits, and SSI on February 1, 1995, February 6, 1997, and March 6, 1998. (Tr. 43-46, 81-83, 126-28.) These applications were denied initially and

**NOT FOR PUBLICATION**                                                                                     **CLOSED**

upon reconsideration. (Tr. 47, 85-93, 130-39.) Plaintiff then requested a hearing before an ALJ, which was held on June 3, 1999. (Tr. 140, 12.) ALJ Ryan affirmed the decision of the Commissioner of Social Security ("Commissioner") on August 27, 1999. (Tr. 9-18.) The ALJ determined that while Brown suffered from a severe impairment, she retained the "residual functional capacity" to perform her "past relevant work as a computer operator or as a cashier." (Tr. 13.) This became the final decision of the Commissioner when the appeals council denied review of the determination on July 14, 2000. (Tr. 5-6.)

Upon that denial, Brown filed a complaint in this Court and in an April 3, 2001 order, the Court remanded the case to the Commissioner for further administrative proceedings. (Tr. 286.) The appeals council ultimately vacated the final decision of the Commissioner and in turn remanded the case to the ALJ. (Tr. 304-05.) The appeals council instructed the ALJ to specifically address whether plaintiff's impairments "meet or equal, singly or in combination, an impairment listed in Appendix 1, Subpart P, Regulation No. 4" and to analyze the specific requirements of her past relevant work. Id.

Pursuant to this order, a second hearing was held before ALJ Ryan on June 13, 2002. (Tr. 283-85.) ALJ Ryan again found that Brown was not disabled within the meaning of the Social Security Act and the Regulation Guidelines, 20 C.F.R. § 404.1520. Id. Because she retained the "residual functional capacity" to perform her "past relevant work" as a computer operator, her application was denied. (Tr. 283-302.) Brown now brings this appeal, claiming that the ALJ's decision is not supported by substantial evidence. (Pl's. Co. at ¶ 8.) Plaintiff's specific objections include that the ALJ erred in finding that she could "perform a

NOT FOR PUBLICATION                                         CLOSED

full range of light work activity" and that he failed to consider all the demands of her past relevant work. (Pl.'s Br. at 4, 6.)

**B.    Personal Facts & Employment History**

Brown is a 49-year-old female with a high school level education. (Tr. 297.) Brown's work history report indicates that she held a job as a cashier at K-Mart during 1988. (Tr. 142.) From 1989 through 1990, Brown worked as a clerical computer operator, where her primary responsibility was to enter freight receipts into the business' database. (Tr. 142, 146.) As a computer operator, Brown sat for approximately five hours a day. (Tr. 146.) She was not required to stand or walk for more than two hours each day, nor was she required to lift anything heavier than a 10-pound ream of computer paper. Id.

From June of 1991 through the onset of her alleged disability in August of 1994, plaintiff worked as a direct care staff member at a home for the mentally challenged. (Tr. 142.) Her duties included cooking dinner each night for the residents and staff, driving a van during group outings, and helping with the bathing and feeding of the residents. (Tr. 143.) Brown was often bending, walking, and standing during the workday. (Tr. 143-44.) Her job also required that she lift large cans of food, as well as the patients when assisting them into and out of the shower. (Tr. 144.) In her disability report, Brown indicated that she left the job when she experienced a sudden onset of neck pain with radiation down her left arm. (Tr. 55.) This pain restricted Brown's range of motion in her neck and shoulders, made it

**NOT FOR PUBLICATION**                                                                                    **CLOSED**

difficult for her to lift heavy objects and to remain seated or standing for extended periods of time.  Id.

C.  **Medical History**

On August 22, 1994, Brown underwent a consultative exam with Dr. Cook ("Cook") at Westfield Orthopedic.  (Tr. 353.)  Cook noted that she had tenderness in the scapula and trapezius.  Id.  Movement of her neck and rotation of her left shoulder also incited pain.  Id.  Cook also remarked that while plaintiff's "reflexes and sensation [were] normal to pinprick," her left hand motor power was diminished.  Id.  Cook prescribed a soft collar to minimize Brown's discomfort and ordered an MRI of the cervical spine.  Id.  A September 1, 1994 MRI revealed that Brown had a "significant deformity of the cervical spine" due to a herniated disc.  (Tr. 351.)  Based on these results, Cook recommended that Brown undergo a neurosurgical evaluation.  Id.

On September 15, 1994, Brown saw neurologist Dr. Lehman ("Lehman")  who agreed that the "MRI show[ed] a central herniated dis[c] at C4-C5."  (Tr. 191-92)  Lehman determined that "[b]ecause of [Brown's] complaints and the soft extruded dis[c] . . . she could be given an additional bit of time to settle down and wear a collar."  Id.  If her symptoms did not subside, Lehman suggested that Brown consider surgery.  Id.

In May of 1995, Dr. Schwartz ("Schwartz")  performed a consultative examination and concluded that although Brown had a herniated cervical disc, she was capable of

**NOT FOR PUBLICATION**                                                                                              **CLOSED**

performing sedentary work so long as it did not require heavy lifting.  (Tr. 199-200.)  Dr. Vekhnis ( "Vekhnis") concurred in her August 2, 1996 examination and further observed that although there was "no tenderness in the thoracic, lumbosacral spine," the motion of Brown's cervical spine was "reduced in all planes."  (Tr. 224-26, 292.)  Brown returned to see Vekhnis two years later with complaints of neck pain that radiated down her right arm.  (Tr. 217-19.)  While Vekhnis' "[e]xamination of the cervical spine showed neck to be quite stiff," she remarked that "[Brown] appeared to be comfortable while sitting" and that her medical impression of the patient remained unchanged.  (Tr. 218-19.)

     Plaintiff also continued to see Cook intermittently from the date of her initial examination through 2000, with complaints of neck, back and shoulder pain.  (Tr. 345-53.)  Throughout this time, Brown remained ambulatory and continued to perform such daily life activities as light housekeeping and driving.  (Tr. 27-29.)  Chores such as vacuuming, mopping and lifting heavy objects, however, aggravated Brown's pain.  (Tr. 202.)  Plaintiff counteracted this pain with over-the-counter pain relievers, a neck brace, and a heating pad.  (Tr. 345-53.)  Although Cook consistently recommended surgery, Brown declined surgical intervention because the physicians could not guarantee total success.  (Tr. 349.)  Cook also emphasized the need for physical therapy and routine exercise to alleviate Brown's symptoms and to facilitate her recovery.  (Tr. 348.)  Plaintiff did not follow these recommendations due to the pain in her back caused by the jarring effect of walking.  (Tr.

**NOT FOR PUBLICATION**                                                      **CLOSED**

216.) Cook asserted however, "[t]here must be some way she [could] overcome this" and must at least "do the neck exercises which she [had] not been doing." (Tr. 348.) He further opined in his December 15, 1999 report, that while Brown was "totally disabled," he believed she could recover sufficiently to perform her job and would be capable of maintaining clerical sedentary activity. (Tr. 333-34.)

This diagnosis was echoed in the physical work performance evaluation from August 14, 2000. (Tr. 354-57.) The report stated Brown was "capable of performing physical work at the sedentary level," although she could only "tolerate a 4 hour day progressing to an 8 hour day over a period of 12 weeks." (Tr. 354.) The evaluation also indicated that Brown demonstrated "self-limited" participation on a number of physical tasks and her alleged reasons for such lack of participation was pain and fatigue. Id. Dr. Cote ("Cote"), the physical therapist who administered the evaluation, recommended that Brown participate in a "hands on" conditioning program to improve her endurance, strengthen her posture and educate her understanding of the appropriate boundaries of "stretch pain and discomfort." (Tr. 356-57.)

On January 31, 2001, Brown saw Dr. Kilakkathi ("Kilakkathi") with complaints of right shoulder and neck pain with radiation, although she did not have a recent injury. (Tr. 323-25.) Kilakkathi remarked that there was no right shoulder joint tenderness or effusion and ordered an MRI and CAT scan of the cervical and lumbar spine. (Tr. 313-23.) The

NOT FOR PUBLICATION                                              CLOSED

March 23, 2001 cervical spine CAT scan revealed that Brown had "mild cervical spondylosis from C3-4 through C6-7, congenital central stenosis, and a small focal right sided ridge at C4-5, indenting the adjacent thecal sac with right foraminal stenosis." (Tr. 319.)  Plaintiff received an MRI of the cervical and lumbar spine on October 1, 2001.  (Tr. 313.)  The cervical MRI revealed diffuse disc bulges at C3-C4, C4-C5, and C5-C6 levels, as well as the straightening of the cervical curve.  Id.  There was, however, no evidence of significant disc bulge or herniation at any of the cervical levels.  Id.  The MRI of the lumbar spine also did not reveal any disc bulge or herniation at any of the levels, with the exception of L4-5 and L5-S1 where there was only minimal disc bulge.  (Tr. 315.)

At the request of the social security administration, Dr. Mylod[1] ("Mylod"), reviewed Brown's medical records and offered an opinion as a medical expert at the January 28, 2002 hearing.  (Tr. 311, 369-74.)  Since the 2001 MRI and CAT scan did not reveal a herniated disc, Mylod concluded that plaintiff's condition did not warrant surgery.  (Tr. 371, 299.)  The recent MRI and CAT scan evidence were also more consistent with her clinical history.  (Tr. 358.)  Based on these findings, Mylod determined that Brown's residual functional capacity was unchanged and she was therefore "capable of performing 'light' work." (Tr. 370.)  On January 7, 2002, Brown saw adult neurosurgeon Dr. Liebman, who also recommended physical therapy and exercise rather than surgery to manage plaintiff's extensive symptoms.  (Tr. 343-44.)

**DISCUSSION**

---

[1] Mylod is an orthopedic surgeon and assistant professor of surgery.  (Tr. 358.)

NOT FOR PUBLICATION                                                                  CLOSED

A. Standard of Review

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). While substantial evidence must have real probative weight, it "may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales, 225 F.3d at 317. Cursory conclusions unsupported by evidence cannot justify an ALJ's decision. Id. "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d

NOT FOR PUBLICATION                                                              CLOSED

403, 409 (3d Cir. 1979) (quoting Saldana v.Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa.1976)).

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain; (4) the claimant's educational background, work history and present age." Snee v. Secretary of Health & Human Services, 660 F. Supp 736, 738 (D.N.J. 1987); accord Blalock v.Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the "administrative decision...[is] accompanied by a clear and satisfactory explication of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B.      Standard for the Commissioner's Determination of Disability**

"Disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Barnhart v. Thomas, 124 S. Ct. 376, 379 (2004); Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

The Commissioner must follow a five-step sequential process to determine if an applicant is disabled and eligible for social security disability benefits. 20 C.F.R. § 404.1520. The Commissioner must first ascertain whether or not the claimant is currently engaged in

NOT FOR PUBLICATION                                                                    CLOSED

"substantial gainful activity." Plummer, 186 F.3d at 428. "Substantial gainful activity" is defined as "the performance of significant physical or mental duties. . .for remuneration or profit." Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978). If the claimant is not engaged in "substantial gainful activity" then the ALJ must determine if the claimant is suffering from a severe impairment. Plummer, 186 F.3d at 428. A severe impairment is "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." Thomas, 124 S. Ct. at 379; §§ 404.1520(c); 416.920(c). If the claimant's impairments are severe, the ALJ must further determine if they are listed in Appendix 1 of the Social Security Regulations 20 C.F.R. § 404.1520 or are equivalent to the impairments listed there. Plummer, 186 F.3d at 428; § 404.1520. If the impairments are not listed in or equivalent to those listed in the appendix, then the ALJ must make a finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is defined as what a claimant can still do despite his limitations." Burns, 312 F.3d at 119. Finally, if the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments, then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform" taking into account his or her educational and work experiences. Plummer, 186 F.3d at 428.

NOT FOR PUBLICATION                                                                    CLOSED

## ANALYSIS

**A.      Substantial Evidence Supports the ALJ's Decision**

*1.) Step-One Determination of Substantial Gainful Activity  is Supported by Substantial Evidence.*

  The ALJ concluded in step-one of the sequential analysis that Brown has not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. 297.)  There is substantial evidence supporting this claim and there is no dispute regarding this evidence.

*2.) Step-Two Determination of a Severe Impairment  is Supported by Substantial Evidence.*

  In step-two of the sequential analysis, the ALJ found that Brown has "severe neck and shoulder pain, with radiation into her arms and hands, numbness of her hands, and severe lower back pain."  (Tr. 298.)  ALJ Ryan also determined that her impairments "have more than a minimal effect on her ability to perform basic work activities, such as sitting, standing, walking, lifting and carrying" and therefore are "severe" based on the requirements of 20 C.F.R. § 404.1520(c).  <u>Id.</u>

*3.) Step-Three Determination of Per Se Disability is Supported by Substantial Evidence.*

  Upon remand, in analyzing plaintiff's claim under step-three, the ALJ concluded that while Brown's "impairments are severe, they are not severe enough to meet or medically

**NOT FOR PUBLICATION**                                                  **CLOSED**

equal one of the impairments listed impairments in Appendix 1, Subpart P, Regulation No. 4."[2] (Tr. 298.) Plaintiff does not object to the ALJ's finding in this appeal. When making the step-three determination, the ALJ has a duty to identify which listings apply and provide reasons why they are not met or equaled. Burnett v. Comm'r. of Soc. Sec. Admin., 220 F.3d 112, 119-20 (3d Cir. 2000); see also Fargnoli v. Massanari, 247 F.3d 34, 40 n. 4 (3d Cir. 2001). ALJ Ryan addressed both Brown's cervical spine and back condition in his decision. (Tr. 298.)

Although a 1994 MRI of the cervical spine revealed a C4-C5 disc herniation, the 2001 CAT scan and MRI did not support this diagnosis. (Tr. 190, 313, 319.) Mylod testified that this evidence, in conjunction with Brown's clinical history, was not consistent with a cervical disc herniation. (Tr. 370-71.) Accordingly the ALJ found that "since the record does not document cervical disc herniation and there [was] no evidence of appropriate sensory loss, reflex loss, or significant muscle weakness or atrophy," Brown's spine condition did not meet or equal a disorder of the spine under listing 1.04. (Tr. 298.) The ALJ also concluded that Brown's back condition did not meet or equal a disorder of the spine as well. Id. The 2001 MRI of the lumbar spine did not reveal any herniation or stenosis, nor does the record document any evidence of spinal arachnoiditis. Id.

*4.) Step-Four Determination of Residual Functional Capacity is Supported by Substantial Evidence.*

---

[2] Appendix 1 to Subpart P of Part 404 provides a listing of impairments that qualify as a per se disability. Brown alleged that her spinal condition met or equaled the Appendix 1, 1.04 listing of spinal disorders.

**NOT FOR PUBLICATION**                                         **CLOSED**

The analysis then proceeded to step-four, where ALJ Ryan determined that plaintiff retained the "residual functional capacity" to perform her "past relevant work." See 20 C.F.R. § 404.1520(d). The Social Security regulations define a person's "residual functional capacity" as the most an individual can still do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a); see Burnett, 220 F.3d at 121 (citing Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir. 1999)). In making this assessment, the ALJ "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (Tr. 299.) Additionally, all medical opinions from "acceptable medical sources that reflect judgments about the nature and severity" of the impairments are reviewed, regardless of whether they are based on "formal medical examinations." 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1545(a)(3).

Plaintiff contends the ALJ erred in finding that she retained the residual functional capacity to perform a full range of "light work"[3] activity. (Pl.'s Br. at 4.) As several medical opinions in the record support the ALJ's ruling, this argument is groundless. Most significant was Mylod's expert medical testimony at the January 2002 hearing as to the extent and severity of Brown's impairments. (Tr. 369.) Mylod stated that while Brown's 1994 MRI revealed a large central herniated disc at C4-5 with some indentation of the cervical cord, the most recent MRI and CAT scans did not. (Tr. 370.) Mylod further noted that these results

---

[3] "Light work" is defined as work that involves lifting or carrying objects that weigh no more than 10-pounds. A job is in this category also requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling" of the arms and legs. A "full range" of light work activity requires that a person has the "ability to do substantially all of these activities." 20 C.F.R. § 404.1567 (b).

**NOT FOR PUBLICATION**                                              **CLOSED**

were actually more consistent with Brown's clinical history.  Id.  As example, Cook found that Brown's alleged weakness and diminished sensation did not always fit the nerve root pattern of herniation.  (Tr. 346.)  Kilakkathi's report indicated that Brown's "neck was supple" and that she had 4/5 strength in the right upper extremity and full strength throughout the rest of her body, which also seems contradictory to a diagnosis of long term cervical cord disc herniation with cord compression.  (Tr. 323.)  Finally, even though Brown refused surgical intervention, there is no indication of atrophy or substantial muscle weakness in any of the reports from her consultative or treating physicians.

As the ALJ noted, Brown's own statements are also inconsistent with the finding of a disability.  (Tr. 300.)  Plaintiff told Vekhnis in August of 1996, that she could walk independently and performed all daily life activities that did not require neck bending or lifting.  (Tr. 217.)  The following year, Brown also told Cook that she was planning to take a six-month computer course, which suggests she believed that she could return to work with her new skills.  (Tr. 348.)

Based on Brown's 2001 testing and her clinical history, Mylod "[saw] nothing that would restrict her sitting and standing" and that she could return to work "so long as she didn't have to lift up more than 20 pounds." (Tr. 372.)  This assessment is also consistent with the prognosis of Schwartz, who stated that Brown could return to work, so long as she was not required to engage in heavy lifting.[4]  (Tr. 200.)  Schwartz also did not report any

---

[4] Heavy lifting is not involved in "light work."  See 20 C.F.R. 404.1567 (b).

**NOT FOR PUBLICATION** **CLOSED**

restrictions regarding standing and walking. (Tr. 200-03.) Non-examining state agency medical consultants Dr. Walsh ("Walsh") and Dr. Pineda ("Pineda"), who reviewed Brown's record in 1995 and 1996 respectively, also agreed that plaintiff retained the residual functional capacity to perform light work.[5] (Tr. 228-43.)

Plaintiff also argues that because the ALJ found a "severe impairment" at the second stage of the disability inquiry, he necessarily could not find that Brown could perform the "full range of light work." (Pl's Br. at 5.) A medically determinable combination of impairments is severe if it significantly limits an individual's physical ability to do basic work activities. § 404.1520(c). As the Supreme Court explained in Bowen v. Yuckert, a claimant must make "a threshold showing of severity" in order to satisfy this standard and proceed beyond step-two of the analysis. 482 U.S. 137, 147 (1987). Since Brown satisfied this threshold requirement, the ALJ correctly concluded that her impairments were "severe" and thus, proceeded with the next step of the sequential evaluation. (Tr. 298.) There is nothing contradictory in the ALJ's step-two determination of a "severe" impairment and his step-four finding that Brown retained the capacity for performing light work.

Lastly, Brown incorrectly asserts that the ALJ did not properly consider the findings of the August 2000 physical work performance evaluation. (Pl.'s Br. at 5.) Plaintiff contends that the ALJ did not state the weight he accorded to the results, nor did he provide any reasons for rejecting its conclusions. (Pl.'s Br. at 6.) The ALJ clearly considered this report as his

---

[5] In Jones v. Sullivan, the court considered the opinions of physicians from the state disability determination agency as sufficient evidence, even to contradict the findings of a treating physician. 954 F.2d 125, 129 (3d Cir. 1991).

NOT FOR PUBLICATION                                                    CLOSED

decision referenced the opinions and objective medical evidence presented by all relevant medical sources in the record, including the evaluation. (See Tr. 295, 300.); see Cotter v. Harris, 650 F.3d 481, 482 (3d Cir. 1981) ("[An] ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would . . . suffice.") Furthermore, the report was provided by physical therapist Cote, who is not an acceptable medical source under the Regulations. See 20 C.F.R. § 404.1513 (noting the categories of acceptable medical sources as licensed physicians, osteopaths, optometrists, podiatrists, certified psychologists, and qualified speech-language pathologists.) Consequently, opinions from a physical therapist are entitled to consideration as additional evidence, but are not entitled to controlling weight. See 20 C.F.R. § 404.1513(d). Since the testimony of Mylod and the numerous opinions of acceptable medical sources constitute substantial evidence in support of the ALJ's finding, the ALJ correctly concluded that plaintiff retained the residual functional capacity for light work.

*5.) Step-Five Determination of Past Relevant Work Capabilities is Supported by Substantial Evidence.*

Based on this finding, the ALJ must then determine whether Brown can perform any of her "past relevant work." Within the last 15 years Brown's previous employment included working as a computer operator and direct care staff member. (Tr. 142.) While the ALJ determined that Brown could not return to work as a direct care staff member, he did find that Brown could perform her past relevant work as a computer operator based on her description of the job. (Tr. 301.)

NOT FOR PUBLICATION                                                              CLOSED

According to the Dictionary of Occupational Titles[6] ("DOT") 213.362-010, a clerical computer operator job constitutes sedentary work.[7] The ALJ also evaluated the physical exertion requirements of a data entry clerk, which he felt was more consistent with her description of a computer operator, particularly given the "lower specific vocational preparation required." (Tr. 301.) A data entry clerk, as per DOT 203.582-054, is also at a sedentary work level. Both the Regulations and SSR 82-61 provide that a claimant is not disabled if she can perform the kind of work she did in the past, either a particular job based on her description, or the job as it is generally performed. See 20 C.F.R. § 404.1520(e-f); 20 C.F.R. § 416.960(b); SSR 82-61. Since Brown can perform light work, she can do sedentary work as well. 20 C.F.R. § 404.1567(b). Brown's medical record supports this conclusion as well. Doctors Cook and Schwartz both concluded Brown was capable of performing sedentary work. (Tr. 333-34, 200, 354.) Indeed, even the 2000 Physical Work Evaluation stated that Brown was capable of performing at least part-time sedentary work and with physical therapy could progress to full-time sedentary work over a period of twelve weeks. (Tr. 354.) As such, ALJ Ryan correctly found that Brown could perform her past relevant work as a computer operator.

Plaintiff, however, argues that the ALJ failed to consider all of the demands of her past relevant work, specifically the demands of the job on her upper extremities and the need to stay in a relatively fixed position for extended periods of time. (Pl.'s Br. at 6.) It is well

---

[6] The Dictionary of Occupational Titles may be used to establish the requirements of previous work as it is generally performed. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112 (3d Cir. 200).

[7] Although the ALJ classified a clerical computer operator as "light work," this has no bearing on the argument.

**NOT FOR PUBLICATION**                                             **CLOSED**

established, however, that the burden is on the claimant to show an inability to return to former work.  Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979); Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985).  Pursuant to Social Security Ruling 82-62, the claimant is also the primary source of information as to the exertional and skill levels required in past relevant work.  Burnett, 220 F.3d at 123 (3d Cir. 2000).  Plaintiff stated that as a computer operator her primary responsibility was to enter freight receipts into the computer database.  (Tr. 146.)  Her duties also required that she bend up to one-third of the workday and frequently lift up to 10-pounds of computer paper.  (Tr. 148.)  Overall, the job involved up to one hour of standing, two hours of walking and five hours of sitting.  (Tr. 146.)

While Brown indicated that she sat for a large portion of her work-day, her medical record demonstrates that she retains the capacity to meet this demand.  Doctors Mylod, Pineda and Walsh concluded that Brown had no restrictions on sitting and was limited only from lifting heavy objects.  (Tr. 372, 229, 245.)  Plaintiff also testified that the only activity the doctors advised she avoid was heavy lifting.  (Tr. 37.)  When Brown advised treating physician Cook that she was planning to take a computer course, Cook did not express concerns as to her ability to remain seated for an extended period.  (Tr. 348.)  He mentioned only that she would need the screen directed in the proper direction and a good support chair.  Id.

Brown also made no showing that the job placed significant demands on her upper extremities.  Moreover, a number of doctors found that Brown did not have any significant

NOT FOR PUBLICATION                                                                                CLOSED

limitations in her upper extremities.  According to Schwartz, plaintiff was limited only in heavy lifting and had no marked atrophy or reduced grip strength.  (Tr. 200.)  Pineda and Walsh also concluded that Brown did not have any reaching or handling manipulative limitations.  (Tr. 231, 239.)

## CONCLUSION

Plaintiff's recent MRI and CAT scan results and her medical record as a whole provide the substantial evidence necessary to support the ALJ's finding that Brown retains the residual functional capacity for light work and that she can return to her past relevant sedentary work as a computer operator.  As such, plaintiff is not disabled as defined in the Social Security Act and is not entitled to a period of disability or disability insurance benefits.

For the foregoing reasons, the Commissioner's decision is affirmed.

s/William H. Walls
United States District Judge

**NOT FOR PUBLICATION** **CLOSED**

**Appearances**

Robert J. Ryan
1952 Route 22 East
Bound Brook, NJ 08805

Peter G. O'Malley
Assistant United States Attorney
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ  07102